**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FERNANDO AQUINO FLORES and RICARDO ISIDRO REYES, *on behalf of themselves, FLSA Collective Plaintiffs, and the class,*<br><br>　　　　　　　　Plaintiffs,<br>　v.<br>CGI INC.,<br>　　d//b/a BUS STOP DINER,<br>THREE A PLUS INC.,<br>　　d/b/a MALIBU DINER,<br>ALEXANDROS GRIMPAS,<br>JOSE COLLADO, and<br>ALEXANDROS ILIADIS<br>　　　　　　　　Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs, FERNANDO AQUINO FLORES and RICARDO ISIDRO REYES (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this class and collective action Complaint against Defendants, CGI INC., d/b/a BUS STOP DINER, THREE A PLUS INC., d/b/a MALIBU DINER (collectively, "Corporate Defendants") ALEXANDROS GRIMPAS, JOSE COLLADO, and ALEXANDROS ILIADIS ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants"), and state as follows:

## INTRODUCTION

1. Plaintiffs allege, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit; (2) unlawfully retained gratuities; (3) unpaid wages, including overtime, due to time-shaving; (4) liquidated damages; and (5) attorney's fees and costs.

2. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage due to invalid tip credit; (2) unlawfully retained gratuities; (3) unpaid wages, including overtime, due to time-shaving; (4) unpaid spread of hours premium; (5) statutory penalties; (6) liquidated damages; and (7) attorney's fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5. At all relevant times herein, Plaintiff FERNANDO AQUINO FLORES ("AQUINO"), was and is a resident of Bronx County, New York.

6. At all relevant times herein, Plaintiff RICARDO ISIDRO REYES ("ISIDRO"), was a resident of New York County, New York.

7. Defendants collectively own and operate two (2) diners at the following locations:

    a) "Bus Stop Diner" - 3341 Broadway, New York, NY, United States, 10031; and

    b) "Malibu Diner" - 163 W. 23rd St, New York, NY 10011 (collectively, "Restaurants")

8. Both Restaurants are operated as a single integrated enterprise under the common control of the Corporate and Individual Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

    a) All Restaurants are under the control of Corporate and Individual Defendants. Specifically, Individual Defendants ALEXANDROS GRIMPAS and JOSE COLLADO operate the totality of the Restaurants.

    b) The Restaurants offer similar festive and holiday menus. *See* **Exhibit A**.

    c) The Restaurants' establishments serve similar goods, have the same suppliers, and they both share similar décor, ambience and appearance.

    d) All the Restaurants have a centralized Human Resources that deals with hiring, firing, and administering all the Restaurants' work force. In fact, Individual Defendants ALEXANDROS GRIMPAS and JOSE COLLADO manage, administer, and decide over employees, payroll, payments, and wage policies.

    e) Employees are interchangeable amongst the Restaurants' locations. In fact, Plaintiff RICARDO ISIDRO REYES was directed to work at other location to cover understaffed shifts.

9. Defendants operate the Restaurants through the following Corporate Defendants:

    a) Corporate Defendant, CGI INC., d/b/a BUS STOP DINER is a domestic business corporation organized under the laws of New York with a principal place of

        business and an address for service of process located at 3341 Broadway, New York, NY, 10031.

        b) Corporate Defendant, THREE A PLUS INC., d/b/a , is a foreign business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 163 W. 23rd St, New York, NY 10011.

10.    Individual Defendant ALEXANDROS GRIMPAS is the principal and executive officer of all Corporate Defendant entities. ALEXANDROS GRIMPAS exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. ALEXANDROS GRIMPAS frequently visits the Restaurants. ALEXANDROS GRIMPAS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to ALEXANDROS GRIMPAS directly regarding any of the terms of their employment, and ALEXANDROS GRIMPAS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. ALEXANDROS GRIMPAS exercised functional control over the business and financial operations of Corporate Defendants. ALEXANDROS GRIMPAS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

11.    Individual Defendant JOSE COLLADO is a principal and general manager of Corporate Defendants. JOSE COLLADO exercises operational control as it relates to all

employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. JOSE COLLADO frequently visits the Restaurants. JOSE COLLADO exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to JOSE COLLADO directly regarding any of the terms of their employment, and JOSE COLLADO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. JOSE COLLADO exercised functional control over the business and financial operations of Corporate Defendants. JOSE COLLADO had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

12. Individual Defendant ALEXANDROS ILIADIS is a principal and manager of Corporate Defendants. ALEXANDROS ILIADIS exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. ALEXANDROS ILIADIS frequently visits the Restaurants. ALEXANDROS ILIADIS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to ALEXANDROS ILIADIS directly regarding any of the terms of their employment, and ALEXANDROS ILIADIS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such

employees. ALEXANDROS ILIADIS exercised functional control over the business and financial operations of Corporate Defendants. ALEXANDROS ILIADIS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

13. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA, NYLL, and regulations thereunder.

14. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt, front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, bartenders, baristas, cashiers, porters, cooks, line-cooks, food preparers, stock persons,, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (herein, "FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in depriving employees of their wages, including overtime, due to time-shaving. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. A subclass of tipped employees has a claim for: (i) unpaid wages due to an invalid deducted tip credit; (ii) unlawfully retained

gratuities; (iii) liquidated damages; and (iv) attorney's fees and costs. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

18. Plaintiffs bring claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, bartenders, baristas, cashiers, porters, cooks, line-cooks, food preparers, stock persons,, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

19. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number

are presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff AQUINO and Plaintiff ISIDRO are members of the Class, and Plaintiff ISIDRO is a member of the Tipped Subclass.

21. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) failing to pay wages due to invalid tip credit deductions; (ii) unlawfully retained gratuities; (iii) failing to pay wages, including overtime, due to time-shaving; (iv) failing to pay spread of hours premium per requirement of NYLL; (v) failing to provide proper wage statements per requirements of NYLL; (vi) failing to provide proper tip notices to class members; and (vii) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

22. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

23. With regard to Plaintiff ISIDRO and the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff ISIDRO and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip

credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

24. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26. Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Defendants employed Plaintiffs and the Class within the meaning of New York law and applicable state laws;

    b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class members properly;

    c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class members for their work;

    d. Whether Defendants properly notified Plaintiffs and Class members of their hourly rates;

    e. Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

    f. Whether Defendants operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs, and Class members for all hours worked;

    g. Whether Defendants properly paid employees their corresponding Spread of Hours premium as required under NYLL;

    h. Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

    i. Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

    j. Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

    k. Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under NYLL and applicable state laws; and

    l. Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## STATEMENT OF FACTS

**Plaintiff FERNANDO AQUINO FLORES**

28.     In or around January 2006, Plaintiff FERNANDO AQUINO FLORES was hired by Defendants to work as a stock person and food preparer for Defendants' "Bus Stop Diner" restaurant located at 3341 Broadway, New York, NY 10031. Plaintiff was employed by Defendants until in or around November 29, 2021.

29.     Regardless that Plaintiff AQUINO was hired to work for Defendants' Bus Stop Diner, Plaintiff was transferred to cover understaffed shifts at Defendants' "Malibu Diner" located at 163 West 23rd Street, New York, NY 10011.

30.     During his employment with Defendants, Plaintiff AQUINO was compensated at the prevailing minimum wage.

31.     During his employment, Plaintiff AQUINO was scheduled to work five (5) days per week from 5:00 a.m. to 1:00 p.m. and one (1) day from 5:00 a.m. to 4:00 p.m., for a total of fifty-one (51) hours per week.

32.     Regardless of the amount of hours worked per week, Defendants compensated Plaintiff every week for exact forty (40) hours, despite that Plaintiff worked more than forty (40) hours per week. In fact, this payment policy deprived Plaintiff of the payment of his corresponding overtime hours. Similarly, FLSA Collective Plaintiffs and Class members were not compensated for hours worked in excess of forty (40) per week. *See* **Exhibit B**.

33.     At all times, Plaintiff regularly worked shifts exceeding ten (10) hours in duration. However, he never received any spread of hours premium for working such shifts, as required under NYLL. Similarly, Class Members regularly worked shifts exceeding ten (10) hours in duration and were never paid spread of hours premium.

**Plaintiff RICARDO ISIDRO REYES**

34. In or around March 2020, Plaintiff RICARDO ISIDRO REYES was hired by Defendants to work as a Delivery person for Defendants' Bus Stop Diner located at 3341 Broadway, New York, NY 10031. Plaintiff ISIDRO was employed by Defendants until in or around August 2021. Plaintiff ISIDRO worked at Defendants' Malibu Diner located at 163 W. 23rd St, New York, NY 10011 on an as needed basis.

35. During his employment, Plaintiff ISIDRO was scheduled to work as follows:

a) From March 2020 to in or around June 2020, Plaintiff ISIDRO was scheduled to work six (6) days per week from 4:00 a.m. to 3:00 p.m. for a total of sixty-six (66) hours per week.

b) From June 2020 to August 2021, Plaintiff was scheduled to work six (6) days per week from 3:00 p.m. – 11:00 p.m. for a total of forty-eight (48) hours per week.

FLSA Collective Plaintiffs and Class members worked similar schedules.

36. Throughout Plaintiff ISIDRO's employment with Defendants, he was compensated at a tipped credit wage of $12.50 per hour. However, Defendants did not properly compensate Plaintiff ISIDRO for tip credit. As a result, Plaintiff ISIDRO was paid below minimum wage, while Defendants claimed invalid tip credit.

37. At all relevant times, Defendants compensated Plaintiff ISIDRO $12.50 per hour. Nevertheless, Defendants were not entitled to claim any tip credit allowance under FLSA or NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or 20% of the total hours worked each shift;

(iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

38. Specifically, Plaintiff ISIDRO was required to engage more than two hours or 20% of his working time performing non-tipped related activities, such as dishwash, help in the kitchen, clean the restrooms, and help move and displace tools and furniture. Even though Defendants required Plaintiff ISIDRO and Tipped Subclass employees to engage in non-tipped activities in excess of two hours or 20% of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

39. Moreover, during his employment by Defendants, Plaintiff ISIDRO and the tipped Subclass members received every week a similar amount in tips, regardless of the quantity of clientele and service of the week. *See* **Exhibit C**. This was a regular claim among Plaintiff ISIDRO and the tipped Subclass members, as it was clear that Defendants were not distributing the tips properly. Defendants failed to inform Plaintiff ISIDRO and tipped Subclass members that all tips received by them were to be retained by them, except pursuant to a valid tip pooling arrangement in violation of FLSA.

40. Regardless of the amount of hours worked per week, Defendants compensated Plaintiff ISIDRO every week for exactly thirty (30) hours, despite Plaintiff working more than forty (40) hours per week. In fact, this payment policy deprived Plaintiff of the payment of his wages and the corresponding overtime hours for hours worked in excess of forty (40) hours per week. Similarly, FLSA Collective Plaintiffs and Class members were not compensated for all worked hours due to Defendants' time-shaving policies.

41. At all times, Plaintiff regularly worked shifts exceeding ten (10) hours in duration. However, he never received any spread of hours premium for working such shifts, as required under NYLL. Similarly, Class Members regularly worked shifts exceeding ten (10) hours in duration and were never paid spread of hours premium.

42. At no time during the relevant periods did Defendants provide Plaintiffs or Class members with proper wage statements as required by NYLL.

43. At no time during the relevant periods did Defendants provide Plaintiff ISIDRO or Class members with proper tip notices as required by NYLL.

44. At no time during the relevant periods did Defendants provide Plaintiffs or Class members with proper wages notices, at the beginning of employment and annually thereafter, as required by NYLL.

45. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL.

46. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL.

47. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

48. Plaintiffs reallege and reaver Paragraphs 1 through 47 of this Class and Collective Action Complaint as fully set forth herein.

49. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

50. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

51. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

52. At all relevant times, Defendants had a policy and practice that failed to pay wages due to invalid tip credit to Plaintiff ISIDRO and FLSA Collective Plaintiffs. .

53. At all relevant times, Defendants had a policy and practice that failed to pay wages, including overtime, to Plaintiffs and FLSA Collective Plaintiffs due to time-shaving policies.

54. At all relevant times, Defendants had a policy and practice of unlawfully retaining Plaintiff ISIDRO and FLSA Collective Plaintiffs' gratuities.

55. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

56. Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs proper wages, when Defendants knew or should have known such was due.

57. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

58. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

59. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to invalid tip credit, tip retentions and deductions, plus an equal amount as liquidated damages.

60. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF NEW YORK LABOR LAW

61. Plaintiffs reallege Paragraphs 1 through 60 of this Class and Collective Action Complaint as if fully set forth herein.

62. At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

63. Defendants engaged in a policy and practice of refusing to pay Plaintiff ISIDRO and tipped Subclass members the New York City minimum wage due to invalid tip credit.

64. Defendants willfully violated the rights of Plaintiff ISIDRO and tipped Subclass members by retaining gratuities, in direct violation of NYLL.

65. Defendants failed to properly notify employees of their tips and tip pooling policies, in direct violation of NYLL.

66. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage notice, at date of hiring and annually thereafter, as required under NYLL.

67. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff ISIDRO and tipped Subclass members proper tip notices, at date of hiring and annually thereafter, as required under NYLL.

68. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under NYLL.

69. Defendants knowingly and willfully operated their business with a policy of not paying employees their wages, including overtime, as required under NYLL.

70. Defendants knowingly and willfully operated their business with a policy of not paying spread of hours premium, as required under NYLL.

71. Due to Defendants' NYLL violations, Plaintiff ISIDRO and tipped Subclass members are entitled to recover from Defendants unpaid wages due to tip credit, tip compensation due to invalid tip pooling, unlawfully retained gratuities, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime under FLSA and NYLL;

d. An award of unpaid spread of hours pursuant to NYLL;

e. An award of unpaid wages due to invalid tip credit deductions under NYLL;

f. An award of invalidly retained gratuities under NYLL;

g. An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

h. Designation of Plaintiffs as Representatives of FLSA Collective Plaintiffs;

i. Designation of Plaintiffs as Representatives of the tipped Subclass members;

j. Designation of this action as a class action pursuant to F.R.C.P. 23;

k. Designation of Plaintiffs as Representatives of the Class; and

l. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

| | |
|---|---|
| Date: January 13, 2022<br>New York, New York     By: | Respectfully submitted,<br>/s/ *CK Lee*<br>C.K. Lee, Esq.<br>**LEE LITIGATION GROUP, PLLC**<br>C.K. Lee (CL 4086)<br>Anne Seelig (AS 3976)<br>148 W. 24th Street, 8th Floor<br>New York, NY 10011<br>Tel.: 212-465-1180<br>Fax: 212-465-1181<br>*Attorneys for Plaintiffs,*<br>*FLSA Collective Plaintiffs*<br>*and the Class* |