**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────

FERNANDO AQUINO FLORES and
RICARDO ISIDRO REYES, *on behalf of*
*themselves, FLSA Collective Plaintiffs and the*
*Class*,

                                     Civil Action No.: 22-cv-00350

                  Plaintiffs,

     v.

CGI INC., d/b/a BUS STOP DINER,
THREE A PLUS INC., d/b/a MALIBU
DINER, ALEXANDROS GRIMPAS,
JOSE COLLADO, and
ALEXANDROS ILIADIS,

                  Defendants.

───────────────────────────────


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND COLLECTIVE ACTION, (2) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, (3) DIRECTING DISSEMINATION OF NOTICE AND RELATED MATERIAL TO THE CLASS, AND (4) SETTING DATE FOR FAIRNESS HEARING AND RELATED DATES**


**LEE LITIGATION GROUP, PLLC**

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

## <u>TABLE OF CONTENTS</u>

**Pages**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 1

    I.      Procedural History ............................................................................ 1

    II.     Overview of Investigation and Discovery ...................................... 2

    III.    Settlement Negotiations ................................................................... 2

SUMMARY OF THE SETTLEMENT TERMS ...................................................................... 3

    I.      The Settlement Fund ........................................................................ 3

    II.     Release .............................................................................................. 3

    III.    Class ................................................................................................. 3

    IV.    Notice ............................................................................................... 4

    V.     Allocation ........................................................................................ 4

    VI.    Attorneys' Fees and Litigation Costs ............................................. 5

    VII.   Service Award .................................................................................. 6

    VIII.  Administration Fees ......................................................................... 6

CLASS ACTION SETTLEMENT PROCEDURE .................................................................. 7

ARGUMENT ............................................................................................................................. 8

    I.      Preliminary Approval of the Settlement Is Appropriate ................ 8

          A.     The Settlement Is Fair, Reasonable, and Adequate. ............... 10

    II.     Conditional Certification of the Rule 23 Class Is Appropriate ........... 15

          A.     Numerosity ................................................................................ 16

          B.     Commonality ............................................................................ 16

          C.     Typicality ................................................................................. 17

          D.     Adequacy of the Named Plaintiffs ........................................... 17

          E.     Certification Is Proper Under Rule 23(b)(3) ........................... 18

    III.    The Class Satisfies Section 16(b) of the FLSA ............................. 20

    IV.    Plaintiffs' Counsel Should Be Appointed as Class Counsel ............ 21

    V.     The Proposed Class Notice Is Appropriate .................................... 22

          A.     The Proposed Class Notice Satisfies Due Process .................. 22

          B.     The Notice Plan and Release Are Appropriate ........................ 23

CONCLUSION ......................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

**CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)............................................. 18, 19

*Azogue v. 16 for 8 Hosp. LLC,* No. 13 Civ. 7899, 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016) .......................................................................................................................................... 5

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) .................................. 5, 12, 14

*Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) ........................................................... 8, 22

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).................................... passim

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) .............................. 16

*Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017) ........................................................ 20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-8 (2d Cir. 2007) ............................................................................................................................................ 18

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ........ 15

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................ 11

*Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) ....................... 9

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ............................................... 17

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011)........................................ 18

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ................................................. 16

*Grant v. Warner Music Grp. Corp.*, No. 13 Civ. 4449 (PGG), 2015 WL 10846300, at *1 (S.D.N.Y. Aug. 21, 2015) ....................................................................................................... 15

*Hadel v. Gaucho*, LLC, 193 F. Supp. 3d 243, 244 (S.D.N.Y. 2016)............................................. 6

*Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014) .......................................................................................................................................... 13

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)11, 12, 13

*In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 Civ. 7990, 2017 WL 4541434, at
*6 (S.D.N.Y. Oct. 10, 2017) .................................................................................. 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4
(S.D.N.Y. July 27, 2007) ....................................................................................... 9

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3rd Cir. 1995) . 15

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July
31, 2008) .............................................................................................................. 9

*In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)................................... 9

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) ..................... 18

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)............................ 8, 12

*Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000) ........................................... 14

*Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) ........................... 8

*Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017) .................. 17

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) .................................. 9, 18

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ........................................... 17

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) ................................ 17

*Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) ..................................... 9

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) ................................... 6, 14

*Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16,
2011) ................................................................................................................. 6

*Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) ........ 9, 10, 14, 17

*Sanders v. CJS Sols. Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL 620492, at *5 (S.D.N.Y. Jan.
30, 2018) ............................................................................................................ 17

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) .................. 16

*Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 552 (W.D.N.Y. 2018)...... 9

*Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *4 (S.D.N.Y.
Mar. 23, 2018)................................................................................................ 10, 11

*Vargas v. Howard*, No. 15 Civ. 5101 (GHW), 2018 WL 387896, at *4 (S.D.N.Y. Jan. 10, 2018) ................................................................................................................................................. 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ........................ 8, 9, 14

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. Oct. 2, 2013) .................................................................................................................................. 5

## Statutes

29 U.S.C. § 216(b) ................................................................................................... 1, 22, 23, 25

Fed. R. Civ. P. 23 ............................................................................................................... passim

Fed. R. Civ. P. 54(d)(2) ............................................................................................................ 7

## Other Authorities

Weinstein-Korn-Miller, *New York Civil Practice* ¶ 901.19 ........................................................ 21

*Herbert B. Newberg & Alba Conte, Newberg on Class Actions (5th ed. 2017)* ................... *passim*

## PRELIMINARY STATEMENT

Subject to the Court's approval, Plaintiffs FERNANDO AQUINO FLORES and RICARDO ISIDRO REYES ("Plaintiffs" or "Named Plaintiffs") and Defendants CGI INC., d/b/a BUS STOP DINER, THREE A PLUS INC., d/b/a MALIBU DINER, ALEXANDROS GRIMPAS, JOSE COLLADO, and ALEXANDROS ILIADIS (collectively, "Defendants", and together with Plaintiffs, the "Parties"), have settled this wage and hour class and collective action for $375,000 (the "Settlement"). The Settlement satisfies all of the criteria for preliminary approval.

Plaintiffs respectfully request that the Court enter the Proposed Order and: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement"), attached as **Exhibit A** to the Declaration of C.K. Lee ("Lee Declaration"); (2) conditionally certify the settlement class under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for settlement purposes only; (3) approve the proposed Notice of Proposed Class Action Settlement ("Class Notice"), attached as **Exhibit B** to Lee Declaration; (4) approve Plaintiffs' proposed schedule for final settlement approval and set a date for the fairness hearing and related dates; (5) appoint C.K. Lee of Lee Litigation Group PLLC ("Plaintiffs' Counsel") as counsel for the class ("Class Counsel"), and (6) appoint Advanced Litigation Strategies, LLC as the claims administrator.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Procedural History

On January 13, 2022, Plaintiffs filed the instant lawsuit seeking to bring class and collective action claims against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") ("the Litigation"). The Complaint alleged that Defendants failed to pay Plaintiffs and other non-exempt employees: (i) proper wages, including overtime, due to Defendants' time-

shaving policies; (ii) proper minimum wages due to invalid tip credit; (iii) unlawfully retained gratuities; (iv) proper spread of hours compensation; in addition to (v) statutory penalties.

On April 1, 2022, Defendants filed their Answer to the Complaint. On April 7, 2022, the Parties engaged in a full-day in-person mediation with Martin F. Scheinman of Scheinman Arbitration & Mediation Services, a highly respected mediator experienced in resolving complex employment disputes. During this mediation, the Parties reached a settlement in principle and, thereafter, continued negotiating the terms of the class settlement, which was memorialized in the Settlement Agreement.

## II.    Overview of Investigation and Discovery

Plaintiffs' Counsel conducted a thorough investigation of the Parties' claims and defenses, focusing on the underlying merits of the claims of Class Members (defined below), the damages to which they may have been entitled, and the propriety of class certification.  In preparation for the class mediation, Defendants produced paystubs, payroll summaries and time records for Plaintiffs, and the credit card tips report for the time period of March 28, 2020 through March 28, 2021 for Plaintiffs and Class Members. Based on the documents produced by Defendants for discovery and mediation, and Plaintiffs' testimony, Plaintiffs' counsel was able to determine the potential damages owed to Plaintiffs and the Class Members.

## III.    Settlement Negotiations

On April 7, 2022, after having engaged in numerous informal telephonic settlement discussions, the Parties engaged in a full-day in-person mediation with Martin F. Scheinman, a highly respected mediator experienced in resolving complex employment disputes.  During this mediation, the Parties reached a settlement in principle.  Had the Parties failed to settle amicably, the Parties would have continued to engage and/or seek additional time to complete formal written discovery, produced documents, conducted depositions, and retained and deposed experts.  In

addition, Plaintiffs would have moved for class certification of state-law claims pursuant to Fed. R. Civ. P. 23, Defendants would have opposed class certification, and one or both Parties would have moved for summary judgment, each at significant cost to the Parties.

<u>**SUMMARY OF THE SETTLEMENT TERMS**</u>

I.    <u>**The Settlement Fund**</u>

The Parties agreed to settle the lawsuit for a total settlement amount of $375,000 (the "Settlement Fund"). The Settlement Fund covers Class Members' awards, service awards to the Named Plaintiffs Fernando Aquino Flores and Ricardo Isidro Reyes, attorneys' fees and costs, and costs of settlement administration. The "Net Settlement Amount" is the Settlement Fund minus the amount of service awards approved by the Court, the amounts of attorneys' fees and reimbursement for costs approved by the Court, and reasonable Court-approved costs of settlement administration.

II.   <u>**Release**</u>

The Settlement Agreement provides that Named Plaintiffs and each Class Member who does not timely opt out of the Settlement will release Defendants from all wage and hour claims that have been brought, or could have been brought, under the New York Labor Law and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages. Only Class Members who endorse their settlement check(s) will release their FLSA Claims.

III.  <u>**Class**</u>

The "Class Members" are defined as Named Plaintiffs and all current and former non-exempt front of house or back of house employees employed by Defendants at Bus Stop Diner or Malibu Diner from January 13, 2016 to April 15, 2022, who do not opt-out of the Litigation.

3

IV.    <u>**Notice**</u>

Within thirty (30) days of entry of this Court's Order granting preliminary approval, notice will be mailed to the last known address of each Class Member, which information will be provided by Defendants.  The claims administrator will take reasonable steps to obtain the correct address of any Class Member whose notice is returned as undeliverable and will attempt to re-mail notices to those Class Members.

The proposed Class Notice contains information about how Class Members can exclude themselves from and/or object to the Settlement.  Class Members will have sixty (60) days from the date of notice mailing to submit opt-out requests or object to the Settlement.

Every Class Member who does not opt out will receive a settlement check after final approval of the Settlement, provided they complete and return a timely, valid Anti-Fraud Identity Affirmation Form to the claims administrator.  Each settlement check will contain the following affirmation:

> "By endorsing this check, I consent to join the Litigation entitled *Flores v. CGI, Inc. et al.* and I hereby release Defendants from all wage and hour claims under the Fair Labor Standards Act, any other federal wage and hour law, the New York Labor Law and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages including such claims brought or which could have been brought in the Litigation."

Class Members that deposit, endorse, or cash their settlement checks will release their FLSA claims.

V.    <u>**Allocation**</u>

Every Class Member who does not opt out and who timely submits valid and appropriately executed tax forms ("Qualified Class Member") will receive a settlement check containing his or her settlement payment.  The claims administrator will determine the settlement payments to each Class Member using data provided by Defendants.  After the deduction of all court-approved

service awards, attorneys' fees and costs, and administration fees from the Settlement Fund (the "Net Settlement Amount"), individual settlement allocations will be computed based on the number of weeks worked by Class Members during the relevant period.  The settlement allocations shall be made in accordance with the dates of employment as set forth in the confidential documents provided by Defendants' counsel.  Amounts otherwise allocated to claimants who opted out shall be applied to the Net Settlement Amount to be distributed to Class Members.  The funds remaining from any uncashed checks 120 days after issuance shall be void and returned to Defendants.

## VI.    Attorneys' Fees and Litigation Costs

Consistent with the Settlement Agreement, Plaintiffs' Counsel will apply for reimbursement from the $375,000 Settlement Fund for their litigation costs, and for attorneys' fees of One Hundred Twenty-Five Thousand Dollars and Zero Cents ($125,000), approximately 33% of the Settlement Fund.[1]  The proposed Class Notice will explain Plaintiffs' Counsel's request to Class Members.  The Court need not rule on fees and costs now.  Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will subsequently file a formal motion for approval of attorneys' fees and reimbursement of expenses, simultaneously with his motion for final approval of the Settlement.  Defendants will not oppose the motion provided it does not increase the Settlement Fund.

---

[1] Attorneys' fees exceeding this range are commonly awarded in wage and hour class and collective litigation of this type. *See, e.g.*, *Azogue v. 16 for 8 Hosp. LLC,* No. 13 Civ. 7899, 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. Oct. 2, 2013)); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (same).

## VII.    <u>Service Awards</u>

Named Plaintiffs, Fernando Aquino Flores and Ricardo Isidro Reyes, will apply for a service award totaling $15,000.00 to be distributed as follows: $10,000 to Fernando Aquino Flores and $5,000 to Ricardo Isidro Reyes, in recognition of the services they rendered on behalf of the Class, and in exchange for their global release of all claims.[2]  Plaintiffs have served the Class well by assisting with the preparation of the pleadings, the factual investigation of the claims, in discovery and during mediation.  The proposed Class Notice will explain Plaintiffs' request for service awards.  Plaintiffs will move for Court approval of the service awards simultaneously with their motion for final approval of the Settlement.  Defendants will not contest the service awards.

## VIII.   <u>Administration Fees</u>

The parties have retained Advanced Litigation Strategies, LLC ("Claims Administrator"), an experienced claims administrator under common control of Class Counsel, to mail the Class Notice to Class Members, receive and process objections and opt-out statements, calculate each Class Member's individual settlement award and tax withholdings, pay out the Settlement Fund, provide weekly reports detailing the results of the mailings and participation, and answer Class Member's inquiries.  The Claims Administrator will be required to agree to a reasonable cap for administration fees and expenses determined by the Court, which the Parties estimate to be $25,000.

---

[2]  This is in line with typical service awards in this Court. *See, e.g.*, *Hadel v. Gaucho*, LLC, 193 F. Supp. 3d 243, 244 (S.D.N.Y. 2016) (approving service awards of $15,000 to two named plaintiffs and $10,000 to two others in FLSA action);  *Raniere v. Citigroup Inc*., 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving settlement service awards of $20,000, $15,000 and $7,500 for named plaintiffs in FLSA and NYLL action); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class representatives).

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and conditional certification of the settlement class;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented, and the Court may finally certify the settlement class.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 13.10 *et seq*. (5th ed. 2017). This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, appointing Plaintiffs' Counsel as Class Counsel, and approving the proposed Class Notice and authorizing the Claims Administrator to send it.

The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. Within fourteen (14) calendar days following the entry of an order granting preliminary approval, Defendants will, based on the records in its custody and/or control, provide the Claims Administrator with the class list, in Excel format, reflecting all Class Members, identified by, to the fullest extent possible, as based on Defendants' internal records: (i) name; (ii) last known address and telephone number; (iii) dates of employment; and (iv) Social Security Numbers.

2. The Claims Administrator will mail the Class Notice to Class Members within thirty (30) calendar days following the entry of an order granting preliminary approval.

3.  Class Members will have sixty (60) days after the date the Class Notices are mailed to opt out of or object to the settlement ("Opt-Out Period"). Plaintiffs will file a motion final approval of the Settlement and will separately file a motion for attorneys' fees and costs and a motion for service awards, no later than thirty (30) calendar days after the end of the Opt-Out Period.

4.  If the Court grants Plaintiffs' motion for final approval of the Settlement, the Court will enter judgment in accordance with the Settlement Agreement and dismiss the case with prejudice.

## ARGUMENT

## I.    Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *see also Newberg* § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) ("A district court's approval of a class action settlement is reviewed for exceeding its discretion. . . . In class settlement cases, we accord the trial judge's views 'great weight' because of her position 'on the firing line, 'where she is' exposed to the litigants, and their strategies, positions and proofs") (internal citations omitted); *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) ("It is within a trial court's discretion to approve a proposed class action settlement."). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties," and keep in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Id.* (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Id.* To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (citing *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (same); *Newberg* § 11.25 ("[C]ourts will grant preliminary approval where the proposed settlement 'is neither illegal nor collusive and is within the range of possible approval.'") (citations omitted).

Courts determine fairness upon review of both "the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (citations omitted); *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 552 (W.D.N.Y. 2018) (recognizing that courts treat the adversarial nature of a litigated FLSA case as an "adequate indicator" of the fairness of a settlement) (quoting *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014)).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the Class and for Class Members to object or opt out of the Settlement. After the Opt-Out Period, the Court will be able to evaluate the Settlement with the benefit of the Class Members' input.

A.     **The Settlement Is Fair, Reasonable, and Adequate.**

Although the Court's task on a motion for preliminary approval is merely "to determine whether notice of the proposed settlement should be sent to the Class, not to make a final determination of the settlement's fairness," *Newberg* § 13.13, it is useful for the Court to consider the criteria by which it will ultimately judge the settlement.

In evaluating a class action settlement, courts in the Second Circuit "look to the so-called 'Grinnell factors'" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See, e.g., Romero*, 58 F. Supp. 3d at 420; *accord Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *4 (S.D.N.Y. Mar. 23, 2018). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1.      **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and [the] multitude of other problems associated with them." *Surdu*, 2017 WL 3842859, at *10 (S.D.N.Y. Sept. 1, 2017) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)).  This case is no exception, with approximately 200 potential class members and significant legal disputes over the propriety of class/collective action certification and as to the merits.

Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.  There would be depositions, discovery, including expert discovery, a motion for collective certification under 29 U.S.C. § 216(b), class certification proceedings pursuant to Fed. R. Civ. P. 23, and ultimately summary judgment proceedings, each at significant cost to the parties.  A complicated trial would also likely be necessary.  Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume vast amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

2.      **The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

Notice of the Settlement and its details has not yet issued to the Class.  The Court should more fully analyze this factor after Class Members have been given the opportunity to opt out or

11

object.  At this early stage in the process, given that Plaintiffs have agreed to the terms of the Settlement, this factor weighs in favor of preliminary approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery work for both sides, and the filing and adjudication of respective summary judgment motions, the Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *In re Warfarin*, 391 F.3d at 537).  The pretrial negotiations and discovery must be sufficiently adversarial that they are "not designed to justify a settlement, [but rather represent] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal citations omitted).

The Parties' discovery here meets this standard.  Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs, to determine the hours they worked, the nature of any potential wage claims they had against Defendants, the wages they were paid, the nature of their daily activities, and other information relevant to their claims and the claims of class members.  Plaintiffs' counsel obtained and reviewed data from Defendants, including paystubs, payroll summaries and time records for Plaintiffs, and the credit card tips report for the time period of March 28, 2020 through March 28, 2021 for Plaintiffs and Class Members. Based on the documents produced by Defendants for discovery and mediation, and Plaintiffs' testimony, Plaintiffs' counsel was able to determine the potential damages owed to Plaintiffs and the Class Members. Therefore, this factor favors preliminary approval.

4.    **Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)**

In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Henry v. Little Mint, Inc*., No. 12 Civ. 3996 (CM), 2014 WL 2199427, at \*8 (S.D.N.Y. May 23, 2014) (quoting *In re Austrian*, 80 F. Supp. 2d at 177). Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. A trial would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and the NYLL, especially in regard to the time shaving claim, which is highly dependent on testimony, and in light of the defenses available to Defendants. As such, to the extent that Plaintiffs would argue that they were not appropriately compensated for all hours worked, they would have faced an extreme burden of proof.

Accordingly, even though Plaintiffs believe that they could ultimately establish Defendants' liability, to do so would require significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of preliminary approval.

5.    **Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)**

If the litigation continues, there is significant risk that the Court will decertify any conditionally certified FLSA class before the end of trial. Defendants have experienced and skilled counsel, who will formally oppose any subsequent motion to certify Plaintiffs' state-law claims under Rule 23. Settlement eliminates the risk, expense, and delay associated with maintaining certification. This factor favors preliminary approval.

6.    **Defendant's Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 7)**

The seventh *Grinnell* factor explores the Defendants' ability to withstand a greater judgment. However, even if a Defendant can withstand a greater judgment, this factor "standing alone, does not suggest that the settlement is unfair." *Beckman*, 293 F.R.D. at 476 (internal citation marks omitted). Therefore, this factor is neutral and does not preclude the Court from granting preliminary approval.

7.    **The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Wal-Mart*, 396 F.3d at 119).

Defendants have agreed to settle this case for $375,000. This substantial sum represents a good value given the attendant risks of litigation. Each Qualified Class Member will receive a payment that is proportional to the number of the weeks they worked during the relevant class period. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Thus, the *Grinnell* factors all weigh in favor of granting preliminary approval of the Settlement at this early stage. Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Romero*, 58 F. Supp. 3d at 420 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

14

II.     <u>**Conditional Certification of the Rule 23 Class Is Appropriate**</u>

For settlement purposes only, Plaintiffs seek to certify the following class under Federal Rule of Civil Procedure 23(a) and 23(b)(3).

Named Plaintiffs and all current and former non-exempt front-of-house and back-of-house employees at Bus Stop Diner and Malibu Diner employed by Defendants, between January 13, 2016 and April 15, 2022, who do not opt-out of the Litigation.

As discussed below, Plaintiffs contend, and Defendants do not dispute for settlement purposes only, that this settlement class meets all of the requirements for class certification. *See* Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Conditional Rule 23 class certification for settlement purposes and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *See Grant v. Warner Music Grp. Corp.*, No. 13 Civ. 4449 (PGG), 2015 WL 10846300, at *1 (S.D.N.Y. Aug. 21, 2015) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3rd Cir. 1995)).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Plaintiffs contend that all such criteria are met.

### A. **Numerosity**

Numerosity is presumed where a putative class has forty (40) or more members. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Plaintiffs contend that they can easily satisfy the numerosity requirement because there are approximately two hundred (200) Class Members.

### B. **Commonality**

The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). In Plaintiffs' view, the required relationship between the claims of Plaintiff and those of the Class clearly exists here.

Plaintiffs assert that they and Class Members bring similar claims that involve numerous common issues. Specifically, Plaintiffs assert that Defendants similarly failed to pay them and Class Members the proper minimum wages, including overtime wages, due to time-shaving; failed to pay them and Class Members the proper minimum wages, including overtime wages, due to an invalid tip credit; illegally retained gratuities; failed to pay proper spread of hours premiums; and also failed to provide them with wage statements and wage notices in conformity with the NYLL. Plaintiffs contend that other common issues include, but are not limited to: (a) whether Defendants employed Plaintiffs and members of the Class within the meaning of New York and federal law; (b) Defendants' practices regarding failure to pay proper minimum wages; (c) Defendants' practices regarding failure to pay proper overtime wages; (d) Defendants' practices regarding failure to pay proper spread of hours premiums; and (e) the nature of Defendants' policies, practices, and payroll systems.

16

### C.  Typicality

Rule 23 requires that the claims of the class representatives be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Romero*, 58 F. Supp. 3d at 418.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Vargas v. Howard*, No. 15 Civ. 5101 (GHW), 2018 WL 387896, at *4 (S.D.N.Y. Jan. 10, 2018) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Plaintiffs contend that their claims arise from the same factual and legal circumstances that form the bases of Class Members' claims, and that typicality is thus satisfied.  Plaintiffs contend that they and Class Members were all non-exempt employees employed by Defendants, and that they were subject to the same policies as identified above.

### D.  Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Sanders v. CJS Sols. Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL 620492, at *5 (S.D.N.Y. Jan. 30, 2018) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).  There is no evidence that Plaintiffs have interests that are antagonistic or at odds with Class Members—on the contrary, Plaintiffs' interests are clearly aligned with the interests of the class. *In re Doria/Memon Disc. Stores Wage*

& *Hour Litig.*, No. 14 Civ. 7990, 2017 WL 4541434, at *6 (S.D.N.Y. Oct. 10, 2017) ("[Plaintiff's] interests, recouping money invested, are similar to those of the proposed class").

### E.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions Predominate

Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-8 (2d Cir. 2007) (internal quotations marks omitted). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). The predominance requirement, which is meant to test "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," is "a more demanding criterion than the commonality inquiry under Rule 23(a)" and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lizondro-Garcia*, 300 F.R.D. 169 at 176 (S.D.N.Y. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

Plaintiffs assert that Class Members' common factual allegations and common legal theory – that Defendants failed to pay proper minimum wages, including overtime wages; failed to pay proper spread of hours premiums; and illegally retained gratuities – predominates over any factual or legal variations among class members. Similarly, Plaintiffs' claims that the other common

questions and legal theories – including an alleged failure to provide proper wage statements and notices – predominate over any individual questions related to those inquiries.    Thus, predominance is satisfied for purposes of certifying a settlement class.

### 2.    A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Asare v. Change Grp. of New York, Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *8 (S.D.N.Y. Nov. 18, 2013); (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968)); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Here, settlement on a class basis is superior to other available methods for the fair and efficient resolution of this action.    The alternative would be the potential filing of many hundreds of individual actions, which is neither an effective means by which to accomplish justice nor an economical use of the Court's time and resources.    Further, given the expense of litigation and the small size of numerous individual claims, many members of the class likely could not afford to pursue relief absent class treatment.    Given these facts, Plaintiffs contends that a class action is superior to other available methods of settling this case.    *See* 2 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 901.19 at 9-97 ("[T]he superiority requirement is most likely to be met in the paradigmatic case for which the class action device was developed: cases in which a large number of claimants each suffer damages in a small individual amount.    In such cases, the class action is not only a superior device, but the only device by which all such claims may be adjudicated.").    Here, class treatment will create uniform resolution of the issues, and achieve judicial economy,

convenience and fairness to all parties.  Accordingly, Plaintiffs respectfully request that the Court certify the Class pursuant to Rule 23 to effectuate the Settlement.

**III.    The Class Satisfies Section 16(b) of the FLSA**

Plaintiffs contend that this case is also appropriate for certification under Section 216(b) of the FLSA, 29 U.S.C. § 216(b).  Under the FLSA, an action may be maintained by an employee or employees on behalf of others who are "similarly situated." 29 U.S.C. § 216(b).  Courts follow a two-phased approach for determining whether an FLSA action meets the "similarly situated" standard. *See, e.g.*, *Lynch v. United Services Automobile Assoc.*, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007) (quoting 29 U.S.C. § 216(b)).  In the initial, "conditional" certification phase, the "similarly situated" standard is more permissive than Rule 23 and requires only that the named plaintiffs make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017) (citations omitted).

Here, Plaintiffs contend that they and Class Members are similarly situated for purposes of conditional certification of a collective action under Section 216(b) of the FLSA, 29 U.S.C. § 216(b).  Plaintiffs and Class Members all worked for Defendants and claim that (i) employees were not paid proper minimum wages, including overtime, due to time-shaving; (ii) employees were not paid proper minimum wages, including overtime, due to an invalid tip credit;  (iii) Defendants illegally retained gratuities; (iv) employees were not paid proper spread of hours premiums; and (v) that Plaintiffs and all non-exempt employees were not provided with proper wage statements and wage notices.  Accordingly, Plaintiffs contend, and Defendant does not dispute, for purposes of settlement only, that conditional certification under 29 U.S.C. § 216(b) is appropriate.

**IV.**    <u>**Plaintiffs' Counsel Should Be Appointed as Class Counsel**</u>

The lawyer representing Plaintiffs, C.K. Lee of Lee Litigation Group PLLC, should be appointed as Class Counsel.  Federal Rule of Civil Procedure 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

Plaintiffs' Counsel meets all of these criteria.  As set forth in the accompanying Declaration of C.K. Lee, Plaintiffs' Counsel has done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and potential Class Members' claims.  Plaintiffs' Counsel is familiar with Defendants' wage-hour policies and practices and uniquely positioned to assess the risks in this case.  Additionally, Plaintiffs' Counsel has substantial experience prosecuting and settling class actions, including wage and hour class actions, and is well-versed in wage and hour and class action law and well-qualified to represent the interests of the class.  Accordingly, courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in similar class actions.

**V.**    **The Proposed Class Notice Is Appropriate**

    **A.**    **The Proposed Class Notice Satisfies Due Process**

The content of the proposed Notice of Proposed Class Action Settlement, attached as

**Exhibit B** to Lee Declaration, fully complies with due process and Federal Rule of Civil Procedure

23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> > (i)    the nature of the action;
> >
> > (ii)    the definition of the class certified;
> >
> > (iii)    the class claims, issues, or defenses;
> >
> > (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v)    that the court will exclude from the class any member who requests exclusion;
> >
> > (vi)    the time and manner for requesting exclusion; and
> >
> > (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Class Notice here satisfies each of these requirements.  Additionally, it describes the terms of the Settlement, informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the proposed Class Notice is more than adequate to put Class Members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).  Courts have approved class notices even when they provided only general information about the settlement terms. *See Charron*, 874 F. Supp. 2d at 191 (class notice need only "describe the terms of the settlement generally").  The proposed Class Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

### B.    <u>The Notice Plan and Release Are Appropriate</u>

Notice will be mailed to the last known address of each Class Member within thirty (30) days of entry of this Court's Order granting preliminary approval.  The Claims Administrator will take reasonable steps to obtain the correct address of any Class Member whose notice is returned as undeliverable and, where correct addresses are obtained, will attempt re-mailing to those Class Members.  The proposed Class Notice contains information about how to exclude oneself and/or object to the settlement.  Class Members will have sixty (60) days from the date of mailing to submit opt-out requests or object to the settlement.

Likewise, the Court should preliminarily approve the releases of claims in the Agreement. Those releases were bargained for at arms-length and are part of the compromise vigorously negotiated and consummated in exchange for the Settlement Fund.  The language of the releases is fair and effectuates the release of claims asserted in the litigation or that arise out of or relate to the facts alleged therein.

### <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the Proposed Order and: (1) grant preliminary approval of the Settlement Agreement, (2) conditionally certify the settlement class under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), (3) approve the proposed Class Notice, (4) approve Plaintiffs' proposed schedule for final settlement approval and set a date for the fairness hearing and related dates, (5) appoint Plaintiffs' Counsel as Class Counsel, and (6) appoint Advanced Litigation Strategies, LLC as the claims administrator.

Dated: New York, New York                    Respectfully submitted,

    May 6, 2022                              LEE LITIGATION GROUP, PLLC

                                    By:    */s/ C.K. Lee*

                                         C.K. Lee, Esq. (CL 4086)
                                         148 West 24th Street, 8th Floor
                                         New York, NY 10011
                                         Tel: (212) 465-1188
                                         Fax: (212) 465-1181

                                         *Attorney for Plaintiffs, FLSA Collective Plaintiffs and the Class*

24