**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FERNANDO AQUINO FLORES and RICARDO ISIDRO REYES, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class*, <br><br> Plaintiffs, <br><br> -against- <br><br> CGI INC., d/b/a BUS STOP DINER, THREE A PLUS INC., d/b/a MALIBU DINER, ALEXANDROS GRIMPAS, JOSE COLLADO, and ALEXANDROS ILIADIS, <br><br> Defendants | **Case No.: 1:22-cv-350 (KHP)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF THE FLSA SETTLEMENT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... a

INTRODUCTION .............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 1

    *I.*    *Procedural History* ................................................................................................ 1

    *II.*    *Overview of Investigation and Discovery* ........................................................... 2

    *III.*    *Settlement Negotiations, Further Discovery & Preliminary Approval* ............... 4

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ......................... 5

ARGUMENT ..................................................................................................................... 6

    *I. The Settlement Class Meets the Legal Standard for Class Certification.* ......................... 6

        A. Numerosity ............................................................................................................. 6

        B. Commonality .......................................................................................................... 7

        C. Typicality ................................................................................................................ 8

        D. Adequacy of the Named Plaintiffs ......................................................................... 8

        E. Certification Is Proper Under Rule 23(b)(3). .......................................................... 9

            1.    Common Questions Predominate. ............................................................... 9

            2.    A Class Action Is a Superior Mechanism. ............................................... 10

    *II.*    *The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be  Approved in All Respects.* ..... 11

        A.    The Proposed Settlement Is Substantively Fair. .............................................. 12

            1.    Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1). .................. 12

            2.    The Reaction of the Class Has Been Positive (Grinnell Factor 2). ................................ 13

            3.    Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (Grinnell Factor 3). ................................................................................. 13

            4.    Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5). ..................... 15

            5.    Establishing a Class and Maintaining It Through Trial Would Not Be Simple  (*Grinnell* Factor 6). 17

            6.    Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7). .................................. 17

            7.    The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9). ........................................................ 18

            1.    The Settlement Was the Result of Arm's Length Negotiation ....................... 20

            2.    The Distribution of Class Notice Satisfied Due Process ................................ 22

    *III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.* ........................... 25

## **TABLE OF AUTHORITIES**

### Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 9

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................. 25

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) ................................................................................. 23

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969) ......................................................... 23

*Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 (E.D.N.Y. 1990) .......................................... 20

*Campos v. Goode*, 2010 WL 5508100 (S.D.N.Y. 2010) ...................................................... 9

*Carillo v. 27-39 East 30 Rest. Corp.*, 13 CV 4491 (SDNY 2015) .......................................... 23

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................... passim

*Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, 2009 WL 6615729 (S.D.N.Y. 2009) . 8, 10

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ...................................................... 17

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) .................................... 7

*D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001)* ............................................... 12, 21

*deMunecas v. Bold Food, LLC,* 2010 WL 3322580 (S.D.N.Y. 2010) ......................... 15, 20, 22, 25

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) ................................................ 6

*Diaz v. E. Locating Serv., Inc.,* 2010 WL 5507912 (S.D.N.Y. 2010) ............................. 14, 20, 25

*Dorn v. Eddington Sec., Inc.*, 2011 WL 382200 (S.D.N.Y. 2011) ........................................... 7

*Dukes v. Wal-Mart Stores Inc.,* 564 U.S. 338 (2011) .................................................... 17

*Dziennik v. Sealift, Inc.*, 2007 WL 1580080 (E.D.N.Y. 2007) ............................................. 9

*Francisco v. NY Tex. Care, Inc.*, 2022 U.S. Dist. LEXIS 55633 (E.D.N.Y. 2022) ...................... 17

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ............................................. 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 120 S. Ct. 693 (2000) ................................................................................................. 16

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .................................................... 7

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ....................................... 12

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ...................................................... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................... 11

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ................................................ 25

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, 2020 WL 1330744 (S.D.N.Y. 2020) ........................................................................................................................... 17

*In re Agent Orange,* 818 F.2d 168 (2d. Cir. 198) ....................................................................... 23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....... passim

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ............................................................ 14

*In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1st Dep't 1990) .............. 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177 (S.D.N.Y. 2007) ......... 21

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) .......................................................... 15

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008) ...................... 22

*In re Nasdaq Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) ................. 13

*In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ................................... 15

*In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) ...................................... 23

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) .................................................................................................................................. 21

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ........................... 10

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124 (2d Cir. 2001) .......................................................................................................................................... 10

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................................... 14

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) ........................ 7

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................................ 25

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 13

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................... 6, 8

*Marisol A. by Forbes v. Giuliani*, 185 F.R.D. 152 (S.D.N.Y. 1999) ........................................... 15

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) ............................................... 14

*McBean v. City of N.Y.*, 228 F.R.D. 487 (S.D.N.Y. 2005) ......................................................... 10

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ........................................... 25

*McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328 (S.D.N.Y. 2010) ......... 9

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006) .................................................................................................................................................... 10

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972) .......................................................................... 20

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982) .................................. 20

*Perez v. Postgraduate Ctr. for Mental Health*, 2021 U.S. Dist. LEXIS 156116 (E.D.N.Y. 2021) ................................................................................................................................ 17

*Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483 (D.C. Cir. 1992) ................................ 24

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ........................................................ 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) .................. 6

*Rivera v. VI Development Group, LLC et al.*, 522485/2021 (Supreme Court, Kings County 2022) ................................................................................................................................ 23

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, 2003 WL 21136726 (S.D.N.Y. 2003) ................. 13

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ......................................................................... 8

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................................... 9

*Silber v. Mabon,* 18 F.3d 1449 (9th Cir. 1994) ............................................................................ 23

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 136 S. Ct. 1540 (2016) ................................................... 16

*Torres v. Gristede's Corp.*, 2006 WL 2819730 (S.D.N.Y. 2006) ................................................ 10

*Toure v. Cent. Parking Sys. of N.Y.*, 2007 WL 2872455 (S.D.N.Y. 2007).................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96 (2d Cir. 2005) ................................ 11, 18

*Weigner v. City of New York,* 852 F.2d 646 (2d Cir.1988)........................................................... 22

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988)................................................... 23

*You Qing Wang v. XBB, Inc*., 2022 U.S. Dist. LEXIS 57481 (E.D.N.Y. 2022)........................... 17

## Rules

Fed. R. Civ. P. 23 ................................................................................................................... passim

## Other Authorities

29 U.S.C. § 216(b) ........................................................................................................................ 1

**INTRODUCTION**

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval"). The Parties' $435,000[1] settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Procedural History**

On January 13, 2022, Plaintiffs, on behalf of themselves and others similarly situated,  filed the instant lawsuit seeking to bring a Class and Collective Action Complaint against Defendants CGI INC., d/b/a BUS STOP DINER, THREE A PLUS INC., d/b/a MALIBU DINER, ALEXANDROS GRIMPAS, JOSE COLLADO, and ALEXANDROS ILIADIS ("Defendants" or "Bus Stop Diner") pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et. seq. ("FLSA"), and the New York Labor Law ("NYLL"), by, *inter alia*: (i) failing to pay wages due to an invalid tip credit; (ii) failing to pay wages, including overtime, due to Defendants' time-shaving policies; (iii) unlawfully retained gratuities; (iv) failing to pay spread of hours premium; and (v) failing to meet the NYLL's requirements on wage statements and notices.

On April 7, 2022, the Parties engaged in a full-day in-person mediation with Martin F. Scheinman of Scheinman Arbitration & Mediation Services, a highly respected mediator experienced in resolving complex employment disputes. During this mediation, the Parties reached a settlement in principle and, thereafter, continued negotiating the terms of the class settlement, which was memorialized in the Class Settlement Agreement ("Settlement Agreement")

---

[1] The class settlement was originally contemplated at $375,000 for a class of 200 individuals. However, based on the increased class size of 232, pursuant to the Settlement Agreement, the settlement amount was increased to $435,000.

## II.   <u>Overview of Investigation and Discovery</u>

Class Counsel conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of Class Members' claims, the damages to which they were entitled, if any, and the propriety of class certification. Discovery in this case was two-phased, with certain documentation produced prior to mediation and, thereafter, confirmatory discovery produced post-mediation for counsel to conduct a more accurate analysis of liability and settlement percentage recovery, given the defenses and arguments raised by Defendants at mediation. Prior to mediation, Plaintiffs reviewed and analyzed paystubs, payroll summaries and time records for Plaintiffs, a sampling of cash wages for OT hours in 2019 for Plaintiff Flores, and the credit card tips report for the time period of March 28, 2020 through March 28, 2021 for Plaintiff Reyes. Following mediation Defendants also produced a class list, a 10% sampling, consisting of Class Members' pay rates for Bus Stop Diner and Malibu Diner, non-tipped Class Members' wage notice forms, and Class Members' payroll summaries in order for Plaintiffs to conduct confirmatory discovery. Plaintiffs' counsel used the documents provided by Defendants for mediation, as well as the recollection and testimony of Plaintiffs, to calculate the potential damages owed to Plaintiffs and the Class Members prior to the Parties' private mediation on April 7, 2022.  Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, the basis and substance of their time shaving allegations, and other information relevant to their claims. Plaintiffs' counsel used the documents provided by Defendants for discovery and mediation, as well as the recollection and testimony of Plaintiffs, to calculate the potential damages owed to Plaintiffs and the Class Members prior to the Parties' private mediation on April 7, 2022. Based on this discovery, Plaintiffs' Counsel was able

to assess the merits of Plaintiffs' claims, the likelihood of class or collective action certification, and potential damages.

After investigating the claims of Plaintiffs and the Class, in Plaintiffs' and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened. Plaintiffs wish to avoid the risk of further litigating their claims. There is an inherent risk in going to trial of being unable to establish liability. A trial would involve significant risks to Plaintiffs in light of the defenses available to Defendants, including Defendants' arguments that (1) there was a clock-in system that tracked employees' time accurately, and (2) that issues arise for a limited time, during the pandemic only, as to recordkeeping and the way tips were collected.

If Defendants were to succeed at trial in establishing that Plaintiffs and the class were properly paid for all hours worked, Plaintiffs and class members would run the risk of obtaining less than the payment being received in the settlement, if anything at all. Moreover, Defendants maintain that they are unable to withstand a greater judgment. Considering the risks of ongoing litigation, the defenses available to Defendants, and the inability of Defendants to withstand a greater judgment, the settlement provides Plaintiffs and the Class with a recovery that is both fair and reasonable.

The various risks on the substance of the claims and the challenges with achieving commonality on the class claims make this a good recovery for the Class. Based on the Claims Administrator's calculations of the actual settlement allocations to the 230 Class Members who did not opt out (there were only two opt-outs), the highest settlement payment will be approximately $4,441.08, representing approximately 311 workweeks, and the average settlement payment will be approximately $1,096.54, representing 76.79 workweeks. This extremely high

per person payment is one of the highest seen by Class Counsel and demonstrates the settlement as being especially beneficial to Class members. While Plaintiffs believe that they could ultimately establish Defendants' liability, to do so would require significant factual development. Plaintiffs' counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain. The proposed settlement alleviates these uncertainties. Moreover, given the current economic conditions, obtaining any further, timely payment on this class settlement would be a complete victory and would put money in the hands of workers who need it. This factor therefore weighs heavily in favor of final approval.

## III.    Settlement Negotiations, Further Discovery & Preliminary Approval

The formal parameters of the settlement were the result of contentious negotiations. In addition to numerous telephone conferences for settlement, the parties were ultimately able to reach a class settlement in principle through a full-day mediation overseen by Martin F. Scheinman of Scheinman Arbitration & Mediation Services. Prior to the mediation, Plaintiffs submitted a detailed mediation statement which explained to Mr. Scheinman the Plaintiffs' and class' claims, noted Defendants' vulnerabilities, acknowledged risks, and provided and explained Plaintiffs' damage calculations. Thereafter, the Parties continued to negotiate certain open settlement terms, which they memorialized in the Settlement Agreement and General Release, which was fully executed on April 15, 2022.

Because of the uncertainty of Plaintiffs' legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement. On May 6, 2022, Class Counsel then prepared and submitted a preliminary approval motion, which was approved by the Court on May 18, 2022.

## SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $435,000 | The Fund, comprised of $435,000.00 for the Class Settlement Agreement ("Settlement Agreement"), covers all of Defendants' obligations under the settlement (exclusive of payroll taxes) |
| Attorneys' Fees, Costs & Expenses | 1/3 of the Gross Settlement Fund $145,000, plus costs and expenses of $6,579.70 | Class Counsel has filed a motion for approval of attorneys' fees, cost and expenses with this motion. |
| Administration Fees | Advanced Litigation Strategies LLC ("ALS") $25,000 | Administration Fees are to be paid out of the Gross Settlement Fund. |
| Service Award | $15,000, representing $10,000 for Fernando Aquino Flores and $5,000 for Ricardo Isidro Reyes | Service awards to Plaintiffs for their assistance to Class Counsel, services on behalf of the Class, and in exchange for a global release of all claims. Class Counsel has filed a motion for approval of these service awards simultaneously with this motion. |
| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | No. This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment. |
| Allocation Formula | How will the individual settlement allocations be calculated? | Individual settlement allocations will be calculated based on the number of weeks worked by Class Members during the Class Period. |
| Class Size | What is the class size? | 230 Class Members |
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who endorses his or her check will release Defendants from Fair Labor Standards Act claims. |
| Funding | What is the status of Defendants' funding? | Defendants have funded $100,000 of the settlement amount, which is currently being held in escrow by the Claims Administrator. Defendants are in default of the September installment. |
| Reversion | Is there any reversion? | Yes. The funds remaining from any uncashed checks 120 days after issuance shall revert to Defendants. |

## ARGUMENT

### I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On May 18, 2022, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiffs respectfully request that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiffs and all current and former non-exempt front-of-house and back-of-house employees at Bus Stop Diner and Malibu Diner employed by Defendants, between January 13, 2016 and April 15, 2022. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs clearly satisfy the numerosity requirement as there are 230 Class members.

**B. Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the Class' claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D at 181.

This case involves numerous common issues. Plaintiffs and the Rule 23 class members all bring common claims involving allegations, which Defendants deny, that Defendants failed to pay Class Members their: (i) proper wages due to an invalid tip credit, (ii) proper wages, including overtime, due to time shaving, (iii) illegally retained gratuities, and (iv) spread of hours premiums. Plaintiffs also allege, and Defendants deny, that Defendants failed to provide Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab,*

*Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) . Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Plaintiffs and the Rule 23 Class Members performed the same or similar job duties as non-exempt employees, and allege that they were subject to the same policies as identified above. Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiffs satisfy the typicality requirement.

## D. Adequacy of the Named Plaintiffs

Plaintiffs Fernando Aquino Flores and Ricardo Isidro Reyes are adequate class representatives. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to

ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiffs satisfy the adequacy requirement because there is no evidence that Plaintiffs' and class members' interests are at odds – on the contrary, Plaintiffs' interests are aligned with the interests of the class.

**E. Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

**1. Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. Predominate over those issues that are subject only to individualized proof." *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136

(2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, at 139 (2d Cir. 2001). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all non-exempt employees employed by Defendants were subjected to the same unlawful policies, and that all such employees failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

## 2. A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a

non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal

quotation marks omitted). Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[2]

**A. The Proposed Settlement Is Substantively Fair.**

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

**1. Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 230 putative class members with fact-intensive claims under both federal and state law. A

---

[2] Defendants deny Plaintiffs' allegations and assert that they complied with all applicable laws and regulations at all times.

complicated fact-intensive trial would be necessary. "[C]lass actions have a well-deserved reputation as being the most complex." *See In re Nasdaq Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998). Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. Moreover, should the settlement not be approved, and the litigation continue, there would be significant delay to engage in continued discovery and motion practice, and it is unknown when a trial on this matter could feasibly occur. This settlement, on the other hand, makes monetary relief available to class members, weighing in favor of final approval.

### 2. The Reaction of the Class Has Been Positive (Grinnell Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the claims administrator mailed the Court-approved notices ("Notices") of the class and collective action settlement to the class members. Defendants also posted the notices in each of their locations during the notice period. The Notices explicitly informed class members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no Class Members have objected to the settlement, and only two (2) individuals have opted out of the settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (Grinnell Factor 3).

1.     The parties have completed enough discovery to recommend settlement. The pertinent

question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The Parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with the Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, the basis and substance of their time shaving allegations, and other information relevant to their claims. Prior to the April 7, 2022 mediation, Plaintiffs reviewed and analyzed paystubs, payroll summaries and time records for Plaintiffs, a sampling of cash wages for OT hours in 2019 for Plaintiff Flores, and the credit card tips report for the time period of March 28, 2020 through March 28, 2021 for Plaintiff Reyes. Following mediation Defendants also produced a class list, a 10% sampling, consisting of Class Members' pay rates for Bus Stop Diner and Malibu Diner, non-tipped Class Members' wage notice forms, and Class Members' payroll summaries in order for Plaintiffs to conduct confirmatory discovery.

Based on these circumstances, the Parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz v. E. Locating Serv., Inc.,* No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010), at *5; *deMunecas v.*

*Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010), at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation). Therefore, this factor also weighs in favor of final approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is not without risk. "Litigation inherently involves risks." *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. by Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery," *supra.*

Plaintiffs and the Class brought a minimum wage claim alleging that Defendants failed to pay them at proper minimum wage rate due to an invalid tip credit. This claim is risky because Defendants' production reveals that they provided notices to employees. The issue is then whether the tip credit is valid because Defendants failed to provide properly itemized wage statements informing Plaintiffs and tipped Class Members with the amount of the tip credit claimed against their minimum wage.

Plaintiffs and the Class also brought a claim alleging that Defendants illegally retained gratuities. However, pursuing this claim is risky as Defendants provided proof by way of tip sheets,

showing tips distributed on a daily basis from the register when Bus Stop adjusted the credit cards at the end of the shift.

Plaintiffs and the Class also brought a claim alleging that Defendants failed to pay Class Members their lawful wages, including overtime wages, due to Defendants' policy of timeshaving. This claim is risky for many reasons. First, time saving is rarely proven on the documents and would require corroborating testimony. Secondly, Defendants argue that employees agreed that their wages were correct by signing for them.

Plaintiff and the Class also brought a spread of hours claim alleging that Defendants failed to pay proper spread of hours premiums to Class Members. Defendants' documents revealed that (1) Plaintiff Flores, whose claims are representative of those of other non-tipped employees, did not regularly work shifts in excess of ten (10) hours in duration; and (2) on the rare occasions when either Plaintiffs or Class members worked shifts in excess of ten (10) hours in duration, Defendants compensated employees with the spread of hours premium for such shifts. Moreover, these employees were compensated well above the minimum wage and not entitled to spread of hours premium. As a result, there is likely no liability on the spread of hours claim.

Plaintiff and the Class brought claims pursuant to the Wage Theft Protection Act. However, pursuing statutory penalties for Defendant's violations of the WTPA in federal court is risky in light of the Supreme Court's ruling in *Spokeo, Inc. v. Robins* that Article III's "injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'" 578 U.S. 330, 136 S. Ct. 1540, 1545 (2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693 (2000)). While some federal courts have concluded that wage notice and wage statement claims confer Article III standing notwithstanding these strictures. *See Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *24-25,

2020 WL 1330744 (S.D.N.Y. March 20, 2020), other federal courts, including several in this Circuit have concluded otherwise, holding that WTPA violations are insufficiently concrete and particularized to confer Article III standing on plaintiffs. *See Perez v. Postgraduate Ctr. for Mental Health*, 2021 U.S. Dist. LEXIS 156116 (E.D.N.Y. Aug. 18, 2021) (rejecting claim for violation of NYLL § 195(3) for failure to identify how missing information on wage statements caused injury); *Francisco v. NY Tex. Care, Inc*., 2022 U.S. Dist. LEXIS 55633, *16-17 (E.D.N.Y. March 28, 2022) ("While those may be technical violations of the NYLL, neither Plaintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action"); *You Qing Wang v. XBB, Inc*., 2022 U.S. Dist. LEXIS 57481, at *35 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim.").Given the uncertain state of the law, there is potentially limited class liability on the WTPA claims.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions. Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as how many hours were uncompensated. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).

Defendants maintain they cannot withstand a greater judgment which is consisted with the fact that they have defaulted and/or been delayed on settlement installment payments (in both May and September 2022). While Defendants may be able to withstand a greater judgment, a

17

"defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian and German Holocaust Litigation*, 80 F Supp. 2d at 178 n.9 (internal citation marks omitted). Here, the Settlement Agreement eliminates a substantial risk of collection by requiring Defendants to remit $25,000 per month from May 15, 2022 to the Administrator, of which currently $100,000 has already been funded (although, as mentioned Defendants are in default of their September 2022 payment installment. The Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Moreover, due to the economic reality of the ongoing pandemic and inflation crisis facing the U.S., Class Members who are low wage workers would receive a much needed monetary benefit from this settlement. Therefore, Defendants' inability to withstand a greater judgment weighs heavily in favor of the fairness of the Settlement.

### 7.  The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).

The $435,000 settlement amount represents an excellent value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Wal-Mart,* 396 F.3d at 119).

The percentage recovery depends on the methodology of calculation. Based on the confirmatory class discovery produced, the best-case scenario of back wages owed, and considering the risks described above, amounts to approximately $751,680.00, resulting in approximately **57%** recovery of Defendants' total class liability. However, this figure takes into account certain robust assumptions that, if a more conservative approach is taken, would result in a lower damage calculation and a higher percentage recovery. For example, to calculate class-wide damages on the time shaving claim, we assumed that non-tipped Class Members were time shaved approximately ten (10) hours of pay at their regular hourly rate; and eight (8) hours of overtime at the overtime rate of time and a half, every week that they worked throughout their employment period which we assumed to be three (3) months for each Class member, given the high volatility and high employee turnover for this class of employees in the restaurant industry.

Tip Credit damages were calculated for each hour worked in the week, based on Plaintiff Reyes' schedule and wage records, and on Defendants' invalid tip credit. Alternatively, assuming Defendants validly claimed a tip credit against the wages of Plaintiff Reyes and other tipped Class Members, Defendants' total Class Liability would be reduced to $647,280.00. In this scenario, the settlement of $435,000.00 would amount to approximately **67%** of Defendants' class liability.

Assuming Defendants' tip credit was valid and Defendants' time shaving of Class Members' overtime hours resulted in three (3) hours of unpaid overtime to each Class Member each week, Defendants total class liability would be reduced to $553,320.00. In this scenario, the settlement in principle of $435,000.00 would amount to approximately **78%** of Defendants' total Class Liability.

Weighing the benefits of settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a

satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.,* 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be  approximately  $121  million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement –a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" Id. (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). The Proposed Settlement Is Procedurally Fair.

### 1.  The Settlement Was the Result of Arm's Length Negotiation

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Diaz*, 2010  WL  5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato v. Deutsche Bank, 236 F.3d*

*78 (2d Cir. 2001)* at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the Parties, including a full-day in-person mediation with Martin F. Scheinman of Scheinman Arbitration & Mediation Services during which the Parties engaged in a vigorous exchange regarding their respective claims and defenses.  Class Counsel spent significant effort to achieve the settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Prior to mediation, Plaintiffs reviewed and analyzed paystubs, payroll summaries and time records for Plaintiffs, a sampling of cash wages for OT hours in 2019 for Plaintiff Flores, and the credit card tips report for the time period of March 28, 2020 through March 28, 2021 for Plaintiff Reyes. Following mediation, Defendants also produced a class list, a 10% sampling, consisting of Class Members' pay rates for Bus Stop Diner and Malibu Diner, non-tipped Class Members' wage notice forms, and Class Members' payroll summaries in order for Plaintiffs to conduct confirmatory discovery. Plaintiffs' counsel used the documents provided by Defendants for mediation, as well as the recollection and testimony of Plaintiffs, to calculate the potential damages owed to Plaintiffs and the Class Members prior to the Parties' private mediation on April 7, 2022. Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their daily activities, the basis and

substance of their time shaving allegations, and other information relevant to their claims. This comprehensive discovery enabled Counsel to perform detailed class-wide damage calculations.

On April 7, 2022, the Parties engaged in a full-day in-person mediation with Martin F. Scheinman of Scheinman Arbitration & Mediation Services, where the parties reached a settlement in principle, subject to certain outstanding material terms. The parties continued to negotiate the settlement terms, which were memorialized in the Settlement Agreement ("Settlement Agreement"), which was fully executed on April 15, 2022. . Lee Dec.at ¶ 7.  .  At all times during the settlement process, the Parties negotiated on an arm's-length basis. Lee Dec. at ¶12. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores,* 396 F.3d at 116; *deMunecas, 2010* WL 3322580 *4.

### 2. The Distribution of Class Notice Satisfied Due Process

Ultimately, 192 class settlement notice packets were mailed and, of those, 158 were successfully delivered, for a total deliverable rate of approximately 82%.  As such, we believe that the result of the class notice distribution is adequate and satisfies due process. In addition, in order to provide the best notice practicable, Defendants posted notice at each of its locations, to ensure maximum notification to Class Members. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14.  Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D.

362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice if reasonable means chosen are likely to inform persons affected). See *Carillo v. 27-39 East 30 Rest. Corp.*, 13 CV 4491 (SDNY February 2, 2015) (60% delivery rate); See also *Rivera v. VI Development Group, LLC et al.*, 522485/2021 (Supreme Court, Kings County) (September 7, 2022) (38% delivery rate).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id*. The Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1st Dep't 1990) (approving notice by publication in two newspapers); *see also Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied* 488 U.S. 1005 (1989); *Agent Orange,* 818 F.2d at 168; *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir. 1994) (holding class member bound by judgment although notice not received before opt-out date); *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87

(D.C. Cir. 1992) (same, notice not received because of incomplete address).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. On June 9, 2022, Defendants provided a Class List of 232 Class Members On June 27, 2022, Defendants' counsel supplemented the Class List with employment periods for the Class Members. Upon analyzing the data, ALS determined that eight (8) out of 232 individuals were employed out of the Class Period and excluded them from the Class List; 224 individuals remained. Out of the 224 individuals, ALS disseminated the class notice to 183 individuals via First Class Mail, for whom contact details were provided by Defendants. For those missing a mailing address, ALS attempted to contact them at the phone numbers provided by Defendants, if any, and was able to obtain nine (9) addresses and mailed the Notice Packets to those individuals. Therefore, a total of 192 Notice Packets were distributed. Although forty-one (41) notices out of the 192 were returned as undeliverable without forwarding addresses, ALS diligently pursued obtaining alternate addresses for such Class Members and was able to locate seven (7) updated addresses, which it used to re-mail those notices. All seven (7) re-mailed notices were successfully delivered. Ultimately, based on the class size of 222[3], 158 Notice Packets were successfully delivered for a total deliverable rate of approximately 71%., and 64 were not successfully delivered for a total undeliverable rate of approximately 29%. However, based solely on those 192 notices mailed, the delivery rate was approximately 82% and 34 Notice Packets were not successfully delivered, for a total undeliverable rate of 18%. In addition to the mailing by the claims administrator, in order to provide the best notice practicable, Defendants posted notice at each of its locations[4], to ensure maximum notification to Class Members. Accordingly, the Court

---

[3] Out of the 224 individuals with relevant work periods on the Class List, two (2) opted out of the Class.

[4] Copies of the class settlement notice were posted directly above the timecard machine where employees must punch in and out and/or in the area where the timecard machine is located at Defendants' restaurants.

should find that the notices of the proposed settlement of this case provided by First Class Mail, was the best notice practicable under the circumstances, and that the Claims Administrator acted reasonably in informing potential class members of the settlement.

### III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also requests that the Court approve the settlement of their FLSA claims. Plaintiffs have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶ 14. During

the litigation, counsel highly experienced in wage and hour law represented Plaintiffs and Defendants.

As of September 13, 2022, the deadline for class members to object to or opt-out of the settlement, only two (2) Class Members have opted out of the settlement, and no Class Members have objected. Lee Dec. ¶ 22.

Dated: New York, New York
       October 5, 2022

                                        Respectfully submitted,

                                        **LEE LITIGATION GROUP, PLLC**

                                        By: */s/ C.K. Lee*
                                        C.K. Lee (CL 4086)
                                        Anne Seelig (AS 3976)
                                        148 West 24th Street, Eighth Floor
                                        New York, NY 10011
                                        Tel.: 212-465-1188
                                        *Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

26