```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/21/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FERNANDO AQUINO FLORES and
RICARDO ISIDRO REYES, *on behalf of themselves, FLSA
Collective Plaintiffs and the Class*,

                                        Plaintiffs,

                    -against-

CGI INC., d/b/a BUS STOP DINER, *et al.*,

                                        Defendants.
------------------------------------------------------------------X

**OPINION AND ORDER**

**FINAL APPROVAL OF
SETTLEMENT**

**22-CV-350 (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE:**

         The above-captioned matter came before the Court on Plaintiffs' unopposed motion for

(i) Certification of the Settlement Class, (ii) Final Approval of the Class Action Settlement, and

(iii) Approval of the FLSA Settlement.  (ECF No. 38 (hereinafter, "Motion for Final Approval").)

Also before the Court are Plaintiffs' related and unopposed motions to approve service awards,

and attorneys' fees and costs.  (ECF Nos. 41, 43.)  All parties have consented to my exercising

plenary jurisdiction pursuant to 28 U.S.C. § 636(c) for purposes of these motions.  (ECF No. 19.)

For the reasons that follow, Plaintiff's Motion for Final Approval is GRANTED and requested

service awards are approved and GRANTED as further discussed below.

**BACKGROUND AND PROCEDURAL HISTORY**

         On January 13, 2022, Plaintiffs filed a Class and Collective Action Complaint against

Defendants.  (ECF No. 1.)  Plaintiffs alleged Defendants violated various provisions of the Fair

Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law Article 6,

§§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, by failing to pay overtime wages due to time-

shaving and improper tip credit, failing to pay spread of hours premium, improperly notifying

employees about and tracking tips, and failing to meet the NYLL's requirements on wage statements and notices.  The parties' proposed settlement resolves all claims in the action. Defendants filed an Answer on April 1, 2022, disputing the material allegations and denying any liability in the proposed class and collective actions.  (ECF No. 18.)

On April 7, 2022, the parties attended a settlement conference before a private mediator and ultimately reached the instant settlement.

Class counsel then prepared and submitted a preliminary approval motion that was approved by the undersigned on May 18, 2022.  This approval conditionally certified the settlement class, preliminarily approved the collective settlement, authorized the issuance of notice to Class Members, and granted the parties' plan of allocation (collectively, the "Notice Packet").  (ECF No. 31.)

This Court conducted a fairness hearing on October 20, 2022.  At the fairness hearing, the Court heard oral argument on the overall fairness of the proposed settlement agreement from both a procedural and substantive standpoint, as well as argument about the application for fees.

**THE SETTLEMENT AGREEMENT**

The proposed Settlement Agreement defines the Settlement Class as:

Named Plaintiffs and all current and former non-exempt front of house or back of house employees employed by Defendants at Bus Stop Diner and Malibu Diner from January 13, 2006 to April 15, 2022 and who do not opt-out of the class.

(ECF No. 45-2).  Members of the Settlement Class will be entitled to a share of the Gross Settlement Amount, that is $435,000.  The Fund covers all of Defendants' obligations under the settlement (exclusive of payroll taxes).  This is not a claims-made settlement, meaning that class

members are not required to submit a claim form to receive a payment.  Every Class Member who does not opt out and returns a valid tax form, as required by the administrator, will receive a settlement check containing his or her settlement payment.  After the deduction of all court-approved service awards, attorneys' fees and costs, and administration fees from the Settlement Fund, individual settlement allocations will be computed based on the number of weeks worked by Class Members during the relevant period.

Per the settlement agreement, "[e]very Class Member who does not opt out will release Defendants from all New York wage and hour claims through April 15, 2022.  Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims through April 15, 2022."  (ECF No. 26-1, p. 12.)

In addition to the Settlement Class payments, the Settlement also contemplates an award of Plaintiffs' counsel fees in the amount of 1/3 of the Gross Settlement Fund (i.e. $145,000), plus costs and expenses ($6,579.70); administration fees to be paid out of the Gross Settlement Fund in the amount of $25,000 to Advanced Litigation Strategies LLC; and service awards totaling $15,000 to the named Plaintiffs.  (ECF No. 38-1.)  To the extent class members do not cash their checks after 120 days of receipt, those amounts will revert to Defendants.  Class members who do not cash their checks will not release claims under the Fair Labor Standards Act.

## LEGAL STANDARD FOR APPROVAL OF CLASS SETTLEMENT

In the Second Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted)).  "[C]lass action suits readily lend themselves to

compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Id*. Rule 23(e) provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Court approval of a class action settlement must be premised on a hearing and subsequent finding that the settlement is "fair, reasonable, and adequate" and not the product of collusion or some other malfeasance. *See* Fed. R. Civ. P. 23(e)(3); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

Before approving a class action settlement, the district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the relevant subsection of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012). When confronted with a request for settlement-only class certification, the Court does not need to inquire whether the case, if tried, would "present intractable management problems, for the proposal is that there be no trial." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "At the same time, however . . . other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Id.* (quoting *Amchem*, 521 U.S. at 620) (internal quotation marks omitted). "Thus, in the context of settlement, Rules 23(a) and (b) continue to serve the purpose of 'focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.'" *Id.* (citing *Amchem*, 521 U.S. at 621).

The determination of whether the class should be certified and the terms of the proposed settlement are "fair, reasonable, and adequate" rests in the discretion of the district court. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 273 (2d Cir. 2006); *see* Fed. R. Civ. P. 23(e)(2). In exercising its discretion, the district court must engage in careful balancing but "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As such, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [the Second Circuit] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Id.* at 456. "Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)." *In re Am. Int'l Grp., Inc. Sec. Litig.,* 689 F.3d at 243-44 (2d Cir. 2012).

Courts tasked with approving a settlement then consider its procedural and substantive fairness, determining whether the terms of the settlement and the negotiation process leading up to it are fair. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom*. *In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation marks omitted)). When a settlement is the product of "arms-length negotiations between experienced, capable counsel after meaningful discovery," it is afforded a "presumption of fairness, adequacy, and reasonableness." *Wal-Mart,* 396 F.3d at 116. Additionally, when

considering the benefits achieved by a settlement, courts must keep in mind that "there is a range of reasonableness with respect to a settlement—a range [that] recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

## DISCUSSION

### I.   *Class Certification*

For purposes of settlement, the Court finds that the Class is suitable for certification, in that it satisfies all applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3).

a.   Rule 23(a)

Rule 23(a) imposes four threshold requirements for certification of a class action: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").  Fed. R. Civ. P. 23(a).

With regard to the first requirement, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  "The movant need not provide a precise quantification of their class, since a court may make common sense assumptions to support a finding of numerosity . . . [n]evertheless, the movant must show some evidence of or reasonably estimate the number of class members." *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (internal quotation marks and citation

omitted).  Insofar as the class comprises more than one hundred individuals – in this case 232

class members – the Court finds that the proposed class satisfies the numerosity requirements

of Rule 23.  *See* Fed. R. Civ. P. 23(a)(1).[1]  Accordingly, numerosity is satisfied.

Additionally, the commonality and typicality requirements are also met here.  The

commonality and typicality requirements of Rule 23(a) tend to merge such that similar

considerations inform the analysis for both prerequisites.  *Wal-Mart Stores, Inc. v. Dukes,* 564

U.S. 338, 350 n.5 (2011); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  A class may

only be certified if "there are questions of law or fact common to the class."  Fed. R. Civ. P.

23(a)(2).  Commonality demands that the class's claims "depend upon a common

contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores,*

*Inc. v. Dukes,* 564 U.S. 338, 350 (2011).  "'[F]actual differences in the claims of the class do not

preclude a finding of commonality.'"  *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 73

(S.D.N.Y. 2006) (quoting 5 *Moore's Federal Practice* § 23.23).  Put simply, commonality may be

found were the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single

system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)  Similarly, with the typicality

requirement, Rule 23(a)(3) requires that "the claims or defenses of the representative parties

are typical of [those] of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement "is

satisfied when each class member's claim arises from the same course of events and each class

---

[1] The parties had mailing addresses for 192 class members.  Of those, 158 were successfully delivered, for a total deliverable rate of 82% of the mailed packages.  In addition, Defendants posted notices of the settlement in the diners. (ECF No. 45).  Given displacement of many restaurant workers during the Covid-19 Pandemic, this deliverable rate is not surprising and perhaps better than one might expect.

member makes similar legal arguments to prove the defendant's liability." *Marisol A.,* 126 F.3d at 376. "[M]inor variations in the fact patterns underlying [the] individual claims" do not preclude a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the common questions of law and fact in this case all relate to whether Defendants failed to pay Class Members their proper regular and overtime wages due to Defendants' policy of taking invalid tip credit and time shaving, as well as Defendants' failure to provide accurate wage statements and notices pursuant to New York Labor Law. *See* Fed. R. Civ. P. 23(a)(2). For purposes of settlement, the Court finds that the claims of Plaintiffs are typical of the claims of the Class Members, as the Plaintiffs and the Class Members were all non-exempt employees employed by Defendants and were subject to the same pay practices during the Class Period. *See* Fed. R. Civ. P. 23(a)(3). This is sufficient to satisfy the commonality and typicality requirements, particularly in the settlement context. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-10 (S.D.N.Y. 2015); *see Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014).

In order to meet the final requirement, adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is qualified, experienced and generally able to conduct the litigation. *Marisol A.*, 126 F.3d at 378. To satisfy the first prong, courts in this Circuit have required plaintiffs to show that "no fundamental conflicts exist" between the class' representatives and its members. *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (citing *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)). Here, the Court finds named Plaintiffs and Opt-In Plaintiffs are adequate class representatives

and do not have any interests that are different from or adverse to the Class Members, and therefore will fairly and adequately protect (and have fairly and adequately protected) the interests of the Class Members.  *See* Fed. R. Civ. P. 23(a)(4).   Moreover, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified and experienced counsel.  Plaintiffs' counsel has litigated and settled numerous wage and hour actions and is highly experienced in this type of litigation and thus qualified to represent the class.  Thus, Plaintiffs have fulfilled this final requirement.

   b.  Rule 23(b)(3)

   In addition to satisfying the Rule 23(a) requirements, certification must be appropriate under Rule 23(b).  *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, 2021 WL 234550, at *20 (E.D.N.Y. Jan. 19, 2021) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).  "Certification under Rule 23(b)(3) requires both that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, [predominance] and that (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]. *B & R Supermarket, Inc.,* 2021 WL 234550, at *20 (citing Fed. R. Civ. P. 23(b)(3)) (internal quotation marks omitted).

   "The predominance inquiry tests whether proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Wang v. Tesla, Inc.*, 2021 WL 3160795, at *10 (E.D.N.Y. July 26, 2021) (citing *Amchem,*521 U.S. at 623). "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."

*Wang,* 2021 WL 3160795, at *10 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)) (internal quotation marks omitted).  Plaintiffs need not prove, however, that the legal or factual issues that predominate will be answered in their favor.  *See, e.g., Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).  With regard to the second prong, to satisfy the superiority requirement, the moving party must show that "the class action presents economies of 'time, effort and expense, and promote[s] uniformity of decision.'"  *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 130 (2d Cir. 2013).  The superiority requirement is designed to avoid "repetitious litigation and possibility of inconsistent adjudications." *B & R Supermarket, Inc.,* 2021 WL 234550, at *33 (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.,* 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015)).

Here, as already discussed, Plaintiffs and Settlement Class members suffered the same harm, albeit to different degrees, because of the same alleged failure by Defendants to properly pay them.  Further, there is no evidence that putative class members desire to bring separate individual actions, as there were no objections to the settlement agreement and only two opt-outs, and the Parties are unaware of any individual litigation involving the same issues with these parties.  Accordingly, it is desirable to concentrate the claims in this Court.  Lastly, the request for class certification is only for purposes of settlement, and the Court need not inquire as to whether the case, if tried, would present management problems.  *See In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 WL 4694172, at *7 (S.D.N.Y. Aug. 13, 2020) (citing *Public Emps.' Ret. Sys. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (finding superiority where "there is no overwhelming interest by class members to proceed

individually"); *see also Amchem,* 521 U.S. at 617 ("The policy at the very core of the class action

mechanism is to overcome the problem that small recoveries do not provide the incentive for

any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru*

*Credit Corp.,* 109 F.3d 338, 344 (1997)).  Thus, the Rule 23(b)(3) factors are met.

**II.**     **The Settlement is Fair in Light of Rule 23(e) and the Grinnell Factors**

Pursuant to Fed. R. Civ, P. 23(e), courts routinely approve settlements of a class action

such as the instant one.  "Settlement approval is within the Court's discretion, which 'should be

exercised in light of the general judicial policy favoring settlement.'"  *In re Sumitomo Copper*

*Litig.*, 189 F.R.D. 274, 280 (citation omitted); *see also Wal-Mart Stores*, 396 F.3d at 116 (noting

the "strong judicial policy in favor of settlements, particularly in the class action context")

(internal quotation marks and citation omitted).  As provided above, the district court's

approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2).  This entails a review of both procedural and substantive

fairness.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

"Fairness is determined upon review of both the terms of the stipulation and the

negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174,

184 (W.D.N.Y. 2005).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their]

judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding*

*Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Rule 23(e)(2), as amended on December 1, 2018, instructs the Court to determine

whether the Settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Prior to the 2018 amendments, courts in the Second Circuit have long considered whether a settlement was "fair, reasonable, and adequate" under the nine factors set out in *Grinnell*:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463.  Importantly, "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

The Advisory Committee Notes to the 2018 amendments to Rule 23 explain the goal of the amendments was "not to displace" any of the *Grinnell* factors, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve" the settlement.  *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2).  Accordingly, the Court's assessment of the settlement under Rule 23(e) is guided and informed by the *Grinnell* factors.  *See In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)

12

a.  <u>Procedural Fairness</u>

"With respect to procedural fairness, . . . a District Court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *McReynolds*, 588 F.3d at 804 (citing *D'Amato*, 236 F.3d at 85) (alterations in original).  Accordingly, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016) (citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012) (internal quotation marks omitted).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the named Plaintiffs' claims and confirmatory discovery after preliminary approval of the settlement.  It was arms-length insofar as it was reached between parties who both had experienced counsel and after a full-day mediation with neutral third-party mediator, Martin F. Scheinman.  *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) ("The participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'") (citation omitted).  As class counsel explained, Defendants provided documentation showing that they provided required wage notices, wage statements and receipts showing overtime pay paid in both check and cash form and payment of spread of hours pay.  Thus, the violations initially alleged were contradicted in some

important respects by discovery.  Class Counsel, who is quite experienced in wage and hour litigation, carefully evaluated damages and were required to adjust damages amounts in light of discovery.  At the same time, discovery revealed that the class size was larger, which also impacted the damages computation.  At bottom, the Court finds that Class Counsel properly and thoroughly investigated the claim and negotiated a reasonable settlement for the class, raising a presumption that the settlement achieved meets the requirements of due process.

Additionally, the distribution of class notice satisfied due process; 71% of the class received mailed notice of the settlement and the Diners posted notice of the settlement.  While mailing was not perfect, the Court notes that this settlement was achieved during the Covid-19 Pandemic, which decimated the restaurant industry in New York City and displaced many workers.  In light of this, the fact that 71% of the class received mailed notice is commendable. Coupled with the posted notice, the Court finds that class notice was adequate and reasonable.

Accordingly, taking into consideration all of the parties' efforts, the Court concludes that the settlement is procedurally fair.

b.  <u>Substantive Fairness</u>

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  And, as noted above, the *Grinnell* factors assist the Court in assessing the substantive fairness of the settlement.

The first and third *Grinnell* factors – which evaluate the complexity, expense, and likely duration of the litigation, and the stage of the proceedings and the amount of discovery completed – weighs in favor of final approval of the settlement.  The Court finds that litigation

through trial would be complex, expensive, and long.  There are still delays stemming from the Covid-19 pandemic and depositions and motion practice involving over 200 class members would be extensive and expensive.  Additionally, the parties have completed enough discovery in terms of exchange and evaluation of payroll records to recommend settlement.  The focus of this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3rd Cir. 2004).  The parties' discovery here meets this standard.

The response to the settlement has been positive—no class members have objected to the settlement and only two exercised their right to opt-out.  This is a major indication of fairness.  *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003) (the response of the class "may itself be taken as evidencing the fairness of a settlement").  Thus, this factor weighs strongly in favor of approval.

*Grinnell* factors four and five – the risks of establishing liability and damages – also favor approval of the settlement.  In considering these factors, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).  Plaintiffs' Counsel understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  In particular, discovery revealed that defendants had in fact substantially complied with New York wage notice requirements and spread of hours premium pay requirements.  It also revealed payment of overtime in both cash and check form.  While Plaintiffs' counsel may have had arguments

15

about technical non-compliance and time-shaving, a number of their initial claims were

substantially undermined by discovery.  Further, Plaintiff's Counsel expressed a concern that

even if Plaintiffs were to obtain a judgment greater than $435,000 in the future, likely more

than two years given the jury backlog caused by the Covid-19 pandemic, there would be a

significant risk the amounts could not be collected since Defendants already maintain that they

could not withstand a greater judgment, which is the reason the parties negotiated a lengthy

payment plan.  Indeed, Defendants have already been late on some installment payments into

the settlement fund, but as of the date of this Opinion and Order are up to date on their

payments.  This indicates that a concern about ability to pay a greater judgment is valid.

Four of the *Grinnell* factors concern the reaction of the class to the settlement, the risks

in maintaining the class action through the trial, and the range of reasonableness of the

settlement fund in light of the best possible recovery in light of all of the risks of litigation.  *In re*

*Payment Card*, 330 F.R.D. at 47 ("The range of reasonableness of the settlement in light of the

best possible recovery, and the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often

combined for the purposes of analysis.")  After careful review, all of these factors favor the

proposed settlement.  "Courts generally acknowledge that a contested motion to certify a class

would pose at least some increased risk that class certification might be denied." *Mikhlin,* 2021

WL 1259559, at *6 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

330 F.R.D. 11, 40 (E.D.N.Y. 2019)).  Here, the parties stipulated to class certification solely for

the purpose of settlement.  If the class action were litigated, however, Defendants likely would

have opposed certification of a litigation class and may have mounted winning arguments given

what discovery has revealed and inherent issues in proving time-shaving.  The risks attendant to certifying a class and defending any decertification motion supports approval of the settlement. *See Garland v. Cohen & Krassner*, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011) (citing *In re Med. X–Ray*, 1998 WL 661515 (possibility that defendants would challenge maintenance of a class in the absence of settlement was considered a risk to the class and potential recovery)).

"In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation."  *In re Payment Card*, 330 F.R.D. at 48.  The range of reasonableness for a settlement is a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Mikhlin,* 2021 WL 1259559, at *8 (citing *Wal-Mart*, 396 F.3d at 119) (internal quotation marks omitted).  Here, the parties agreed to the Settlement Amount of $435,000 after negotiations under the direction of a neutral and experienced mediator.  The substantial amount of the settlement, which represents 57-78% of total damages sought depending on the claims that might ultimately succeed, weighs strongly in favor of final approval.  For the individuals who did not opt out of the settlement, the highest individual allocation amount is $4,441.08, and the average settlement payment will be $1,096.54.  These figures represent a substantial and reasonable amount for Plaintiffs to recover via settlement.

Lastly, the final *Grinnell* factor - the ability of the defendant to withstand a greater judgment supports approval of the settlement.  This factor stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate. *See In re PaineWebber*

*Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd sub nom., In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997).  It is not clear if Defendants would be able to withstand a judgment greater than the $435,000 settlement amount for the reasons discussed above.  The Court is also well aware of the number of restaurants that have closed due to the pandemic's effect on business, which is ongoing and impacted Defendants. But here the Settlement Agreement provides Class Members with reasonable and prompt relief as compared to what they may receive at the conclusion of the litigation.  While this settlement agreement does provide for a reverter in the event a class member fails to cash his/her settlement check after 120 days, the Court finds that this provision is appropriate in the unique circumstances of this case, where discovery revealed substantial weaknesses in the claims, where the size of individual awards approaches 78% of total estimated damages, where the Defendant is in a precarious financial situation, and where class members who do not cash their checks will still be able to pursue a claim under the Fair Labor Standards Act.  Other courts have approved wage and hour settlements containing a reverter.  *See, e.g., Lizondro-Garcia v. Kefi LLC*, 2014 WL 4996248, at *3-5 (S.D.N.Y. Oct. 7, 2014) (approving settlement agreement pursuant to which 180 days after class members received their checks, any uncashed checks would revert to defendants); *Bodon v. Domino's Pizza, LLC*, 2015 WL 3889577 (E.D.N.Y. June 4, 2015) (noting approval of settlement agreement whereby defendants would retain funds not claimed by plaintiffs).

In summary, the *Grinnell* factors weigh in favor of approving the settlement.

### III.     *Approval of FLSA Settlement*

Having considered the standards for approval of a collective settlement, the Court hereby approves the FLSA settlement.  Because "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012), satisfaction of the *Grinnell* factor analysis will necessarily satisfy the standards of approval for the FLSA settlement.  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."  *Id.*  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982)).  "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."  *Id.*  The Court finds that are significant *bona fide* factual disputes in this case, as discussed above with respect to the risks of proof faced by Plaintiffs.  The Court therefore finds that the FLSA settlement was the result of contested litigation and arms-length negotiation, and that the settlement terms are fair and appropriate.

For all the above reasons, the Court hereby certifies this case as a class and collective action for settlement purposes on the condition that Defendants fully satisfy their payment obligations under the settlement.  The collective consists of named Plaintiffs and all current and former non-exempt front of house or back of house employees employed by Defendants at Bus Stop Diner and Malibu Diner from January 13, 2006 to April 15, 2022 and who do not opt-out of the class.

IV.    **Attorneys' Fees**

Rule 23(e)(C)(iii) also requires consideration of the terms of any proposed award of attorneys' fees.  Plaintiffs' counsel seeks $145,000 in attorneys' fees, the same amount authorized by the Settlement Agreement, which represents one-third of the Gross Settlement Fund.  (ECF No. 132.)

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees . . . " *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

"The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Parking Heaters,* 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019) (citing *Wal-Mart*, 396 F.3d at 121) (internal quotation marks omitted). "A court applying either method should consider the following *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50).

Here, the amount sought by Plaintiffs' counsel is in line with amounts typically approved by courts in this Circuit for collective actions such as this.  *See e.g.*, *Gaspar v. Pers. Touch Moving, Inc.*, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District"); *Puglisi v. TD Bank, N.A.*, 2015 WL

4608655, at *1 (E.D.N.Y. July 30, 2015) (approving one-third of settlement fund award of attorneys' fees in collective action FLSA case with a class settlement fund). This is also true when considering the lodestar. Class Counsel's request for one-third of the Settlement Funds results in a lodestar of 1.38 assuming the Court were to accept Class Counsel's rates and hours. Even if the Court were to reduce Class Counsel's rates to amounts found to be reasonable for Class Counsel, the reduction would still amount in a multiplier of close to 2. This amount is fully consistent with that found to be reasonable in *Fujiwara* and in other cases in this Circuit. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d, 424, 435 (S.D.N.Y. 2014) (finding that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases"). Although a court generally may calculate reasonable attorneys' fees either by determining the lodestar amount or by awarding a percentage of the settlement amount, the lodestar "cross check" is a measure of reasonableness. *See id.* (citing *Goldberger,* 209 F.3d at 50.

Moreover, while the Court is mindful that some of the gross settlement fund may be returned to Defendants if Class Members do not cash their checks, a percentage fund payout here recognizes counsel's willingness to settle early and not drive up fees or engage in protracted litigation in the face of strong evidence supporting at least some of Defendants' defenses. The Court is also mindful that fee awards in wage and hour cases should "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (quoting *Sand v. Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)). Accordingly, the Court is hesitant to cut the agreed-upon attorneys' fees so as not to

"discourage[e] plaintiffs' attorneys from taking on 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high." *Id.* For these reasons, and in light of the *Goldberger* factors, the Court finds the attorneys' fee award requested to be fair and reasonable. *See Goldberger*, 209 F.3d at 48-49; *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) ("Reasonableness is the touchstone" of attorneys' fee award approval; applying the *Goldberger* factors). This attorneys' fee award shall be deducted from the Gross Settlement Fund.

### V.    Costs

Plaintiff's counsel seeks $6,579.70 in costs. "Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987)). Pursuant to the Settlement Agreement, Class Counsel are also entitled to reasonable, Court-approved costs in addition to the attorneys' fee award. Here, Class Counsel's out-of-pocket expenses include filing fees, service fees, notice printing and mailing fees, and fees related to mediation. In light of the necessity of these expenditures and the reasonableness of the amounts sought, this Court approves these costs and orders that $6,579.70 be deducted from the Gross Settlement Fund.

### VI.   Service Awards

Plaintiff also requests service awards totaling $15,000 as follows: $10,000 for Fernando Aquino Flores and $5,000 for Ricardo Isidro Reyes. (ECF No. 45.) Service payments "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and

continuing as a litigant, and any other burdens sustained by the plaintiff." *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *6 (S.D.N.Y. Mar. 31, 2009). Recognition payments are "particularly appropriate in the employment context." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). When, as here, the plaintiffs are "former or current employee[s] of the defendant . . . by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Id.*; *see also Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."). The same principles are true for those who join the action by filing an opt-in with the Court. In this regard, courts in this Circuit have awarded service awards to opt-in Plaintiffs who were not themselves named Plaintiffs. *See, e.g., Chen v. XpresSpa at Terminal 4 JFK LLC*, 2021 WL 4487835, at *8 (E.D.N.Y. Oct. 1, 2021).

Further, "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person" presents risks to the class representative as well. *Guippone v. BH S & B Holdings*, *LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011).

Here, Plaintiffs maintain that the service award recipients have made important contributions to the prosecution and fair resolution of this action on behalf of the class members. (*See* Declaration of C.K. Lee in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses and for Service Awards ("Lee Dec.") ¶19.)

Throughout the litigation, the service award recipients regularly communicated with Class Counsel and assisted with the preparation of the Complaint and provided information about wage practices at the Defendant diners.  (*Id*.)  Importantly, there have been no objections to the proposed service awards, indicating the Class Representatives adequately represented the class.  The different amounts of the proposed service awards reflect the increased amount of effort and risk expended by the individual Class Representatives, and, in light of the total settlement amount, is fair and reasonable.

Therefore, I approve the proposed service awards that total $15,000.  This amount shall be deducted from the Gross Settlement Fund.

**VII.**   ***Settlement Administrator Award***

The Settlement Agreement provides for Advanced Litigation Strategies LLC to receive $25,000 in administration fees, which are to be deducted from the Gross Settlement Fund.  The Court finds this amount to be reasonable and within the range charged by settlement administrators in similar cases and therefore approves these fees and costs and orders that $25,000 be deducted from the Gross Settlement Fund.

**CONCLUSION**

For the foregoing reasons, this Court certifies the Class and Collective for purposes of settlement and approves the terms and conditions of the Settlement Agreement subject to it being fully funded by Defendants.  The Gross Settlement Fund for payment to Active Class Members is $435,000.  Plaintiffs' requests for (1) service awards totaling $15,000; (2) a payment in the amount of $25,000 to the settlement administrator; (3) $145,000 in attorneys'

fees; and (4) $6,579.70 in costs are GRANTED.  Thus, the Court approves awards, totaling

$191,579.70, which are to be deducted from the Gross Settlement Fund amount of $435,000.

The parties shall proceed with the administration of the settlement in accordance with

the terms of the Settlement Agreement.  The Court shall retain jurisdiction of this matter and

the Court's final approval shall be deemed effective and the case dismissed upon Plaintiffs'

counsel's confirmation to the Court that Defendants have satisfied their payment obligations

under the settlement.

**SO ORDERED.**

Dated: October 21, 2022
        New York, New York

_____

KATHARINE H. PARKER
United States Magistrate Judge